### James C. Welch, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. MEASURE OF DAMAGES—*in action for injury to land from permanent structure.* If the suit is not based on the theory that the structure of the defendant constitutes a nuisance or an illegal and improper structure, but is brought to recover all past, present and future damages on the theory that the structure permanent in character, erected by authority and not negligently constructed, damages the property of the plaintiff, the true measure of damages is the depreciation in market value.

2. INSTRUCTIONS—*when cannot be complained of.* An error in instructions cannot be complained of if the instructions given at the instance of the complaining party contain like error.

3. INSTRUCTIONS—*propriety of, in action where injury resulted from overflowing land. Held,* that it was not error for the court to give an instruction to the jury to the effect "that rains that may be reasonably anticipated to occur at regular intervals of longer or shorter time is not an extraordinary rain within the meaning of the law," etc.

Action in case. Appeal from the Circuit Court of White

county; the Hon. E. E. NEWLIN, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 15, 1911.

**Statement by the Court.** Appellee charged in his declaration that he was the owner of a thirty-seven acre tract of land in White county; that the defendant was possessed of and operating a railroad on its right of way and extending across the southeasterly side of said land; that in June, 1906, the defendant, appellant, constructed a grade embankment provided with an opening with a double sewer of iron pipes, each of said sewers being of the diameter of five feet and which were insufficient to permit at all times free passage of water through them under said embankment; that the natural flow of water was thereby intercepted and thrown back on appellee's lands and the same and his corn crops of 1908 and 1909 were permanently damaged in the sum of $1,000. A trial by jury was had and a verdict and judgment were rendered against the appellant railroad company and in favor of appellee for $360.

NOAH C. BAINUM, for appellant; L. J. HACKNEY and F. M. PARISH, of counsel.

KERN & PEARCE, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

It is insisted here by appellant that the evidence does not support the verdict, and that therefore the court erred in refusing appellant's motion to direct a verdict of not guilty. It is undisputed, and abundantly proved by the evidence, that prior to the spring of 1906, appellee's lands and crops were not overflowed and damaged by the usual and customary floods that occurred from the rain falls in that vicinity. It is also abundantly proved by the evidence that since

the construction of the embankments and sewers of the defendant in 1906, that the small branch or natural watercourse that flows through appellee's lands and through the defendant's said sewers, has been frequently overflowed, and that in 1908 and 1909, about four acres of appellee's land were flooded with water of considerable depth, and his corn crops of said years destroyed. The plaintiff testifies that several times in each of those years he has seen the waters three feet above the top of the sewers, and that the branch has filled up with dirt and gravel about eighteen inches deep at the mouth of the sewers since the sewers were put in and that this deposit though gradually lessening in depth going west, extends for a considerable way up this branch. He is corroborated by a number of others including some of appellant's witnesses, that the branch has filled considerably since the construction of the sewers, and that the waters in ordinary rains are held by the railroad embankment and that said waters were backed up from the embankment back to quite a distance on appellee's land. The contention of appellant that the change made in the course of the branch by the owner of the land in 1905 is the real cause of appellee's overflows is not sustained by the evidence. It appears that this change in the course of the branch was started about seven hundred feet up the branch, and that from this point to the railroad a new and straight channel was made in the branch, the same striking the old channel at or above the railroad. The evidence shows that no overflows were caused by this change from the time it was made to the time when the sewers were put in by defendant. The defendant's civil engineer, L. H. Murray, testifies that at the point up the branch where this change in the channel began, he saw gravel deposit there, and that that point is six and three-tenths feet higher than the bottom of the defendant's sewer pipes. No deposit or fill in the branch occurred above this

point, and no overflow occurred above this point. The deposit or fill in the branch is from this point down to the sewer pipes of appellant. No fill occurred in the sewer pipes or below them, and the evidence shows the branch bottom is much lower just below the sewer pipes. These circumstances strongly corroborate the plaintiff's theory that the bottom of the defendant's sewer pipes are higher than the original bottom of the branch at that point, and that this lessened the fall of the branch, retarded the flow of the waters, and caused the branch to fill up between those points and establish for itself a new grade on its bottom of less declivity. This lessened declivity in the branch would itself tend naturally to cause an overflow, and there being no gravel or deposit or overflow above the point where the new channel of the branch began, together with the fact that there was deposit at this point and down to the sewers, would argue strongly that this point of the branch was lower, rather than shallower, than it was in the original channel, and that therefore the new channel did not cause or tend to cause the appellee's damage. The weight of the evidence, therefore, clearly shows that the defendant's sewers did cause the damage to appellee by overflows. This idea is further strengthened by the fact that prior to the putting in of these sewer pipes, the defendant maintained there a trestle of three bents of the total width of about sixty feet, and the branch was not thereby in the least obstructed, and no damage to land and crops had occurred.

It is further insisted by appellant that the court erred in refusing to instruct the jury that where land is wrongfully overflowed so as to deprive the owner of its use, the true measure of damages is its fair rental value. We have quoted the substance of the declaration as abstracted by the defendant. The suit is not based on the theory that the sewers and embankment of the defendant constitute a nuisance or an

illegal and improper structure.   No question is raised here as to the sufficiency of the declaration in any respect.   The clear intention of the declaration is to treat the structure as a legal and permanent structure, and to claim for all damages that occurred prior to the filing thereof, and for all future damages.   The evidence does not disclose any negligence in the defendant in the construction thereof farther than the fact that the sewers are insufficient to carry off the waters of ordinary rainfalls without damage to plaintiff.   A structure which is permanent in character and erected by legislative authority, and which is not shown to be negligently and improperly built so as to cause unnecessary damages to the landowner, and which is reasonably operated, is not a nuisance, but is what is known in law as a permanent legal structure that cannot be abated or enjoined.   Nevertheless, under our present constitution the landowner is entitled to recover for all damages by reason of the construction and maintenance of such a legal and permanent structure, and the measure of damages against such a structure is for the whole damage, of which depreciation in market value is the measure.   Where the injury is temporary in character and of a transient nature, resulting from successive acts, or even where the structure is erected by legislative authority and damages result from negligent or improper construction, the injured party may bring successive actions for resulting damages.   North Shore St. Ry. Co. v. Payne, 192 Ill. 239, and authorities there cited.

The fact that some of the plaintiff's instructions used such expressions as, "if proven by the preponderance of the evidence to be the negligent act of the defendant," did not prejudice the rights of the defendant with the jury, so far as we are able to see. The question of negligence, or whether or not the damage was caused by the fault of the defendant by improper construction, was not in issue under the

pleadings in this case. Both parties treated the structure in the trial as a legal structure and the question of negligence in building the structure should not have been submitted to the jury. Some of the defendant's instructions contained similar objectionable matter, and the defendant is not in a position to complain of such error; but if it was, the error is not a cause for reversal as the defendant could not have been injured thereby. It was not error in the court to give instruction No. 6 to the effect, "that rains that may be reasonably anticipated to occur at regular intervals of longer or shorter time is not an extraordinary rain within the meaning of the law," etc. O. & M. Ry. Co. v. Ramey, 139 Ill. 9.

We have examined carefully the other instruction, No. 1 for appellee, of which appellant complains, and while somewhat objectionable as stating a mere abstract proposition of law, yet we are satified that no harm was done to appellant thereby. The evidence presents a clear case of recovery, and no other finding of the jury could be sustained as we view the evidence. Finding no reversible error in the record, the judgment of the lower court is affirmed.

*Affirmed.*